**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000478
24-JUN-2026
07:56 AM
Dkt. 109 SO**

NO. CAAP-24-0000478

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
WESLEY SAMOA, Defendant-Appellee,
and
NATISHA TAUTALATASI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-23-0000238)

**SUMMARY DISPOSITION ORDER**
(By: Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

Natisha **Tautalatasi** appeals from the ***Judgment*** *of
Conviction and Sentence as to Natisha Tautalatasi* entered by the
Circuit Court of the Third Circuit.[1]  We affirm.

Tautalatasi, Wesley **Samoa**, and Lama **Lauvao** were charged
with Attempted Murder in the Second Degree.  State v. Lauvao,
No. CAAP-19-0000666, 2022 WL 4114487 (Haw. App. Sep. 9, 2022)
(mem. op.).  We described the facts of the case:

> This case arises out of a September 17, 2018 incident,
> captured on a surveillance video, in which the complainant,
> John Kanui (**Kanui**), a security guard at the Kona Seaside
> Hotel (**Kona Seaside**) in Kailua-Kona, Hawaiʻi, sustained
> severe life-threatening injuries during an altercation
> involving Defendants-Appellants and became quadriplegic as a
> result of those injuries.

Id. at *1.

---

[1]  The Honorable Robert D.S. Kim presided.

A jury found Tautalatasi and Samoa guilty as charged; Lauvao was convicted of Assault in the First Degree. Id. They appealed. We vacated for trial error, and remanded for a new trial. Id. at *2.

On March 14, 2023, a grand jury indicted Tautalatasi and Samoa for Attempted Murder in the Second Degree. The second trial began on January 18, 2024. The jury found Tautalatasi guilty of the included offense of Assault in the Second Degree. The Judgment was entered on June 14, 2024. This appeal followed.

Tautalatasi states three points of error. She contends the trial court erred by: (1) giving an incorrect self-defense jury instruction; (2) giving the included offense instructions separately and in the wrong order; and (3) denying the motion to suppress her statements made to Hawaiʻi Police Department officer Matthew **Taira**, and conditionally allowing use of her testimony from the first trial for impeachment.

**(1)** Tautalatasi requested a jury instruction on self-defense based on HAWJIC 7.01A. It read, in part:

> The use of deadly force upon or toward another person is justified if the defendant reasonably believes that deadly force is *immediately* necessary to protect himself/herself on the present occasion against [death] [serious bodily injury] [kidnapping] [rape] [forcible sodomy].

(Emphasis added.)

The jury was instructed:

> The use of deadly force upon or toward another person is justified if the defendant reasonably believes that deadly force is *immediately* necessary to protect themself on the present occasion against death or serious bodily injury.

(Emphasis added.)

Tautalatasi argues the instruction erroneously included the word "immediately," because the word is not contained in Hawaii Revised Statutes (**HRS**) § 703-304(2) (2014). The instruction was proposed by Tautalatasi. But "the duty to properly instruct the jury lies with the trial court[.]" State v. Reis, 155 Hawaiʻi 452, 454, 566 P.3d 356, 358 (App. 2025), cert. rejected, No. SCWC-19-0000634, 2025 WL 1721499 (Haw. June 20, 2025).

We addressed Tautalatasi's argument in Reis. There, the jury was instructed on deadly-force self-defense based on HAWJIC 7.01A. We held "that the self-defense instruction given to the jury misstated the plain language of HRS § 703-304(2), and was contrary to legislative intent." Id. at 456, 566 P.3d at 360. The trial court erred by giving Tautalatasi's requested self-defense jury instruction.

"Once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction." Id. at 457, 566 P.3d at 361 (cleaned up). The State argues the instructional error was harmless.

The jury was shown State's Exhibit 13b, a Kona Seaside security video. It showed the encounter between Tautalatasi, Samoa, Lauvao, another woman, and Kanui. At 12:33:31 a.m., Kanui is lying on the ground on his left side, motionless, after being beaten. Tautalatasi's attorney published the video and questioned her:

> Q. Natisha, what are you doing in this part now, a little after af -- a little before 12:34 a.m.?
>
> A. Um, I'm gathering -- looking for my slipper.
>
> Q. Natisha, I'm going to pause the video 12:34 and 28 seconds.
>
> You're standing by the golf cart?
>
> A. Yes.
>
> Q. Leaning against it?
>
> A. Yes.

Kanui hasn't moved. He's nonresponsive.

> Q. Let me play it forward.
>
> (At which time the video was played in court.)

At 12:34:28 a.m. Tautalatasi walks to Kanui, who remains motionless on the ground. She kicks him once in the head, gets on her knees, and punches him in the head several times. Kanui ends up on his back from the force of Tautalatasi's

3

blows.  Tautalatasi doesn't stop punching Kanui, who remains motionless, until she is pulled off him at 12:34:48 a.m.  The examination continues:

> Q.    Showing paused video at 12:34 and 53 seconds.
>
> After you were standing by the golf cart did you hit Mr. Kenui [sic] again?
>
> A.    I did.
>
> Q.    Punched him?
>
> A.    Yes.
>
> Q.    Kicked him?
>
> A.    Yes.
>
> Q.    Were you doing that to defend yourself?
>
> A.    No.

After seeing the video and hearing Tautalatasi's testimony, no reasonable jury could have found she acted in self-defense.  The instructional error was harmless beyond a reasonable doubt.  Cf. Bellamy v. City & County of Honolulu, ___ Hawaiʻi ___, ___, ___ P.3d ___, ___, 2026 WL 1623116, at *8 (June 5, 2026) (summary judgment affirmed where supreme court determined, on de novo review, that "a reasonable jury" could not infer or conclude that plaintiff's declaration, which was directly contradicted by video from police officers' body-worn cameras, was true).

**(2)**  Tautalatasi requested jury instructions on included offenses.  Her proposed instructions combined Attempted Assault in the First Degree and Reckless Endangering in the Second Degree.  The trial court gave a separate instruction for each included offense.  Tautalatasi argues the instructions for "Attempted Assault in the First Degree and Reckless Endangering in the Second Degree should have been given as alternative included offenses of Attempted Murder in the Second Degree, in the same jury instruction."

Tautalatasi's requested jury instruction combining included offenses was potentially confusing.  The trial court instead separately instructed the jury on each included offense,

4

in descending order of severity. The verdict form listed the included offenses separately, in descending order of severity. The supreme court has held:

> We cannot fault the trial court's instruction to the jury to first consider whether or not the defendant was guilty of the charged offense and if it found the offense had not been proved, to then proceed to the lesser offense. If a lesser-included offense instruction is given, it is customary to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to guilt of the greater offense.

State v. Pinero, 70 Haw. 509, 524–25, 778 P.2d 704, 714 (1989) (cleaned up).

The trial court did not err by instructing the jury separately on each included offense, in descending order of severity.

**(3)** Tautalatasi moved to suppress statements she gave to Officer Taira, and her testimony from the first trial. The motion gave these examples of her testimony from her first trial, which she attributed to being ineffectively assisted by her attorney:

> Like, who's that crazy lady on the screen?
>
> We've had our troubles in the past, but, you know, that's what made us who we are today[.]
>
> We made our mistakes in life, and we paid for the consequences previous.
>
> I've been almost 10 months sitting incarcerated to this day, and I didn't even know that that was happening.
>
> We did something where somebody got hurt, and he's still alive and well at home.
>
> I've been haunted by the first time watching it.
>
> Yes, very disturbing.
>
> Why did I get so nuts like that, get so crazy, you know?
>
> [H]ow I can get that angry, how I couldn't be responsible enough to take that what I shouldn't took that last drink that I shouldn't have when I didn't feel good already.
>
> Q: Do you feel like you owe apologies for – for your conduct in this case?
>
> A: I — course I do. And . . . other than an apology is just to ask for forgiveness[.]

The trial court denied the motion to suppress Tautalatasi's statements to Officer Taira, and granted the motion to suppress her first trial testimony "based on the state's affirmative representation that it would not present her testimony in its case-in-chief."  But the court also ruled that "the prior trial testimony of Ms. Tautalatasi may be used for impeachment purposes if she elects to testify in the defense's case-in-chief."

Tautalatasi argues "the Circuit Court's error was two-fold: not only was Ms. Tautalatasi subjected to unlawful custodial interrogation, she testified at the prior trial without effective assistance of counsel, rendering the waiver of her right to remain silent invalid."  We need not decide whether the trial court erred, or whether she received ineffective assistance of counsel, because any error was harmless beyond a reasonable doubt.

The State called Officer Taira as a witness.  He testified on direct examination that Tautalatasi said she did not know how she obtained the injury on her forehead.  No testimony about her other statements was elicited.  On cross-examination, Tautalatasi's attorney asked Officer Taira: "You actually had a bit of a more of after conversation with her than that; correct?"

Defense counsel then asked Officer Taira a series of leading questions about what Tautalatasi told him, including "that she couldn't remember how she got the bruises." Tautalatasi herself elicited evidence about her statements to Officer Taira.  Any error in denying her motion to suppress was thus harmless.

As to her prior testimony, she concedes that she "did, in fact, testify in her own defense — and the State did not use her prior trial testimony to impeach her."  She argues:  "The specter of impeachment with prior testimony that was damaging to her case because of prior counsel's errors created a chilling effect on Ms. Tautalatasi's subsequent testimony, and the appropriate remedy should have been suppression."  She did not make an offer of proof during the hearing on her motion to suppress or at trial, nor does she argue on appeal what her

6

testimony would have been had she not been subject to impeachment by her prior testimony.  Any error in conditioning the grant of the motion to suppress Tautalatasi's testimony in the first trial was thus harmless or moot.  State v. Fukusaku, 85 Hawaiʻi 462, 475, 946 P.2d 32, 45 (1997) (issue of whether the trial court should have suppressed the defendant's statements was moot because the statements were never introduced at trial).

The June 14, 2024 *Judgment of Conviction and Sentence as to Natisha Tautalatasi* is affirmed.

DATED: Honolulu, Hawaiʻi, June 24, 2026.

On the briefs:

Randall K. Hironaka,
for Defendant-Appellant
Natisha Tautalatasi.

Kelden B.A. Waltjen,
Prosecuting Attorney,
Charles E. Murray III,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee
State of Hawaiʻi.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge